1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

SCOTTSDALE INSURANCE COMPANY,

Plaintiff,

v.

DAVID FINEMAN,

Defendant.

DAVID FINEMAN,

Counterclaimant,

v.

SCOTTSDALE INSURANCE COMPANY,

Counter-Defendant.

Case No.  4:20-cv-00368-YGR

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT DAVID FINEMAN'S MOTIONS TO DISMISS AND GRANTING DEFENDANT SCOTTSDALE INSURANCE COMPANY'S MOTION TO DISMISS**

Re: Dkt. Nos. 21, 24

Plaintiff Scottsdale Insurance Company ("Scottsdale") brings this action against defendant David Fineman, asserting three causes of actions: (1) declaratory judgment as to the application of the "Conduct Exclusion"; (2) declaratory judgment as to the application of the "Bodily Injury Exclusion"; and (3) declaratory judgment as to "Uncovered Loss". (Dkt. No. 1.) Fineman has counterclaimed, asserting two causes of action: (1) breach of implied covenant of good faith and fair dealing; and (2) breach of contract. (Dkt. No. 20.)

Now before the Court are the parties' cross-motions to dismiss: Fineman moves to dismiss the operative complaint, and Scottsdale moves to dismiss Fineman's counterclaims. The matter is fully briefed. (*See also* Dkt. Nos. 21, 24, 28, 29, 31, 32.)

Having carefully considered the pleadings in this action and the papers submitted on each motion, as well as oral argument from counsel on August 11, 2020, and more fully set forth below, Fineman's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**, and Scottdale's motion to dismiss is **GRANTED**.

## I.   BACKGROUND

This Order summarizes the allegations contained in the parties' complaint and counterclaim.[1]  Thus:

Scottsdale seeks to recover amounts from Fineman that Scottsdale paid in defense and resolution of a "Claim" that was commenced against Fineman by plaintiff Chad Gold alleging that Fineman breached fiduciary duties and made misrepresentations to investors for the purpose of inducing investments (the "Claim") in KineMed, Inc. ("KineMed").  KineMed is an innovative biotechnology company working to commercialize biomarker technology in order to test the efficacy and toxicity of drugs.  Scottsdale issued Business and Management Indemnity Policy number EKS3164350 (the "Policy") to KineMed effective for the period from August 24, 2015 to August 24, 2016 (the "Policy Period").  Subject to the Policy's terms, conditions, limitations, exclusions, and endorsements, the Policy provides coverage under a Directors and Officers and Company Coverage Section (the "D&O Coverage Section").

The Policy contains several exclusions, including as relevant here: (1) the "Conduct Exclusion," which states that Scottsdale is not liable for loss under the D&O Coverage Section on account of any Claim alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any dishonest, deliberately fraudulent, or criminal act of an insured provided that the exclusion does not apply until there is a final judgment against such Insured as to such conduct (including the exhaustion of all appeals, petitions and rehearings in such Claim); and (2) the "Bodily Injury Exclusion," which states that Scottsdale is not liable for loss under the D&O Coverage Section on account of any Claim for emotional distress, among other things.  (*See* D&O Coverage Section §§ C(1)(f), as amended by Endorsement No. 2, and C(1)(a).)  The Conduct Exclusion further states that, if it applies, the insured shall reimburse Scottsdale for any "Costs, Charges or Expenses" that Scottsdale has incurred in defense of the Claim.

Scottsdale provided Fineman with a complete defense in connection with the Claim and

---

[1]  The Court omits citations to the record to expedite the issuance of this Order.

United States District Court
Northern District of California

resolved the Claim on behalf of Fineman under a reservation of rights.  Fineman paid nothing to defend or resolve the Claim.  Specifically: the underlying action, commenced in Los Angeles County Superior Court, concerned alleged negligent misrepresentation and a breach of fiduciary duties in connection with an alleged fraudulent inducement of an individual, Chad Gold, to invest in a private placement equity investment in KineMed.  After KineMed provided Scottsdale with notice of the underlying action and requested coverage for it under the Policy, on October 6, 2016, Scottsdale sent a letter to Fineman in which it stated that it would defend Fineman in the action subject to a full and complete reservation of its rights under the Policy and at law.

The underlying action was eventually submitted to arbitration, where Daniel and Patrick Haffner were added as claimants. Scottsdale continued to provide Fineman with a full defense to the Claim in the arbitration. On August 22, 2019, a Final Award was entered in the arbitration (the "Arbitration Award") in which the arbitrator found that the Haffners prevailed on their causes of action for breach of fiduciary duty and negligent misrepresentation, but not on their causes of action for fraud. The arbitrator awarded the Haffners compensatory damages, pre-judgment interest, emotional-distress damages, and attorneys' fees.  The arbitrator did not award any amounts to Gold in the Arbitration Award. After the entry of the Arbitration Award, the Haffners, Fineman, and Scottsdale entered into a Confidential Settlement Agreement[2] that resolved the Claim, and under which Scottsdale agreed to pay an amount in full satisfaction of the Arbitration Award (the "Settlement Sum").  Notably, there was: (1) never any final judgment; (2) never any order from a court confirming the Arbitration Award; and (3) never any finding that Fineman acted anything more than negligently.

On January 16, 2020, Scottsdale filed this coverage action in which it seeks to recoup from Fineman the Settlement Sum based upon the application of the Conduct Exclusion and the Bodily Injury Exclusion, and because all or a portion of the Settlement Sum does not constitute covered loss under the Policy.  In addition, Scottsdale seeks to recoup from Fineman the defense costs that

---

[2]  The Court notes that the Confidential Settlement Agreement was not provided to the Court for consideration of the cross-motions to dismiss.

United States District Court
Northern District of California

1    it paid on Fineman's behalf based upon the application of the Conduct Exclusion.

2        On April 24, 2020, Fineman filed a Counterclaim, which contains causes of action for

3    breach of contract and bad faith.  In his Counterclaim against Scottsdale, Fineman alleges that

4    Scottsdale breached the Policy by (a) failing to inform its insured in a timely manner of his right to

5    and payment of independent counsel in its October 6, 2016 reservation of rights letter; (b) refusing

6    to settle the Arbitration when it allegedly had an opportunity to do so within policy limits;

7    (c) delaying for months before settling the underlying action after issuance of the arbitration

8    award; (d) filing this coverage action and seeking reimbursement of defense fees and costs it paid

9    in the defense of the arbitration and underlying action without a reasonable basis for doing so;

10   (e) filing this coverage action and seeking reimbursement of the settlement payment without a

11   reasonable basis for doing so; (f) misrepresenting the terms of the Policy in an attempt to support

12   its alleged wrongful conduct; and (g) additional wrongful conduct to be proven at trial.

13   **II.    LEGAL STANDARD**

14       Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for

15   failure to state a claim upon which relief may be granted.  Dismissal for failure to state a claim

16   under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of

17   sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d

18   1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th

19   Cir. 1988)).

20       The complaint must plead "enough facts to state a claim [for] relief that is plausible on its

21   face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face

22   "when the plaintiff pleads factual content that allows the court to draw the reasonable inference

23   that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

24   (2009).  If the facts alleged do not support a reasonable inference of liability, stronger than a mere

25   possibility, the claim must be dismissed.  *Id.* at 678-79; *see also In re Gilead Scis. Sec. Litig.*, 536

26   F.3d 1049, 1055 (9th Cir. 2008) (stating that a court is not required to accept as true "allegations

27   that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

28       A complaint that falls short of the Rule 8(a) standard may be dismissed if it fails to state a

United States District Court
Northern District of California

4

United States District Court
Northern District of California

claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to a nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## III.   ANALYSIS

The Court first addresses Fineman's motion to dismiss Scottsdale's complaint, before addressing Scottdale's motion to dismiss Fineman's counterclaims.

### A.   Plaintiff David Fineman's Motion to Dismiss Complaint

Fineman moves to dismiss Scottsdale's complaint on the following grounds: (1) Scottsdale failed to appropriately reserve its rights to later deny coverage and seek reimbursement; and (2) Counts One, Two, and Three fail to state a claim under Rule 12(b)(6).

#### 1.   *Reservation of Rights*

In general, California law requires that insurers timely and expressly reserve their rights as to the specific exclusions they may later rely on to deny coverage and seek reimbursement. *Canadian Ins. Co. v. Rusty's Island Chip Co.*, 36 Cal. App. 4th 491, 498 (Ct. App. 1995).  The issue of whether an insurer has waived or should be estopped from asserting coverage defenses is typically a question of fact that is inappropriate for resolution on a motion to dismiss.  *Oakland-Alameda Cnty. Coliseum, Inc. v. Nat'l Union Fire Ins. Co.*, 480 F. Supp. 2d 1182, 1192 (N.D. Cal. 2007) ("Like waiver, estoppel is a question of fact.") (citing *United States v. Garan*, 12 F.3d 858, 860 (9th Cir. 1993)); *Redman v. Walters*, 88 Cal. App. 3d 448, 455 (Cal. Ct. App. 1979) ("The existence or absence of estoppel, or waiver, is ordinarily a question of fact, and is one of law only when the evidence is not in conflict *and is susceptible only of one reasonable inference*." (emphasis in original)).

1   Further, the "burden is on the insured to prove that the assumption of a defense establishes

2   waiver or estoppel." *Marentes v. State Farm Mut. Auto. Ins. Co.*, 224 F. Supp. 3d 891, 913 (N.D.

3   Cal. 2016) (citing *State Farm Fire & Cas. Co. v. Jioras*, 24 Cal. App. 4th 1619, 1628-31 (1994)).

4   "To waive a coverage defense, the insurer needs to 'intentionally relinquish a known right.'" *Id.*

5   (quoting *Garamendi v. Golden Eagle Ins. Co.*, 116 Cal. App. 4th 694, 719 (2004)). For estoppel to

6   apply, "the insurer needs to have 'acted in such a manner as to cause the insured reasonably to

7   believe the insurer had relinquished' a coverage defense . . . [and] the insured needs to have 'relied

8   upon the insurer's assumption of the insured's defense to the insured's detriment.'" *Id.*

9   "An adequate reservation of rights will prevent waiver or estoppel." *Id.* "A reservation of

10  rights does not need to specifically address each coverage defense, but can be general." *Id.* (citing

11  *Jioras*, 24 Cal. App. 4th at 1627; *Cal. Union Ins. Co. v. Poppy Ridge Partners*, 224 Cal. App. 3d

12  897, 901-02 (1990)); *see also Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1559 (9th

13  Cir. 1991); *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 33-34 (1995) (same). Moreover,

14  estoppel cannot create coverage where none exists. *Foremost Ins. Co. Grand Rapids v. Evans*,

15  679 F. App'x 538, 540 (9th Cir. 2017) (citing *Advanced Network, Inc. v. Peerless Ins. Co.*, 190

16  Cal. App. 4th 1054, 119 Cal. Rptr. 3d 17, 27 (Cal. Ct. App. 2010) ("[I]t is the general and quite

17  well settled rule of law that the principles of estoppel and implied waiver do not operate to extend

18  the coverage of an insurance policy after the liability has been incurred or the loss sustained.")).

19  Here, Scottdale alleges that the operative reservation of rights letter ("ROR Letter") is the

20  October 6, 2016 ROR letter sent in response to the civil lawsuit filed by Chad Gold against Mr.

21  Fineman. (Dkt. No. 1, ¶ 43.) Fineman points out that this ROR letter was issued before the

22  underlying action was transferred to private arbitration, and *before* the Haffners were added as

23  plaintiffs. Moreover, the ROR letter included in the operative complaint does not contain any

24  reservations of rights as to the arbitration or to the claims brought by the Haffners.

25  While this sole letter may raise a question of whether Scottsdale did properly reserve its

26  rights as to the Haffners and the arbitration, Scottsdale points out that, although it did not allege

27  these facts in the operative complaint, Scottsdale did in fact send several letters reiterating and

28  confirming its reservation after both the commencement of the arbitration and after the Haffners

brought their claims in the arbitration.  (*See* Dkt. No. 28-1, 28-2, and 28-3.)  In light of the existence of these letters, which demonstrate that Scottsdale *could* allege the inclusion of such letters, dismissal *with prejudice* on this ground is not warranted.  This is especially so where issues of waiver and estoppel as it relates to a reservation of rights are more appropriately decided at the summary judgment stage and not the motion to dismiss stage.

Accordingly, the Court **GRANTS** the motion to dismiss on this ground, but provides Scottsdale **LEAVE TO AMEND** to allege the inclusion of these additional letters in the complaint. To advance this litigation, repeat arguments in this regard shall not be made.[3]

### 2.   Count One: Conduct Exclusion

Fineman moves to dismiss Count One, regarding the applicability of the Conduct Exclusion.  Scottsdale opposes the motion on this ground.

<u>Insurance Contracts Under California Law Generally</u>.  In general, insurance policy exclusions are to be strictly construed against the insurer, in order to provide maximum coverage to the insured.  *Cal-Farm Ins. Co. v. TAC*, 172 Cal. App. 3d 564, 577 (Ct. App. 1985); *State Farm v. Partridge*, 10 Cal. 3d 94, 101-102 (1973).  Grants of insurance coverage are to be liberally construed, so that the insured receives the maximum possible coverage.  *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003); *Partridge* 10 Cal. 3d at 101-102; *Cal-Farm Ins.*, 172 Cal. App. 3d at 577.  On the other hand, insurance policy exclusions (as well as other limiting provisos and exceptions) are to be strictly construed, again so that the insured receives the maximum possible coverage.  *Beaumont v. Cal Union Ins. Co.*, 63 Cal. App. 3d 617, 623 (Ct. App. 1977).  The burden of proof is on the insurer to prove conclusively that a policy exclusion applies in order to defeat coverage.  *Clemmer v. Hartford Ins. Co.*, 22 Cal. 3d 865, 880 (1978).

Insurance contracts are governed by the ordinary rules of contract interpretation.  *La Jolla*

---

[3]  Fineman objects to this evidence as improper for the motion to dismiss.  Indeed, it is well known that a federal court is generally limited to the consideration of the parties' allegations when ruling on a motion to dismiss brought under Rule 12(b)(6).  The Court does not consider or rely on these documents except to note that the letters reflect a proffer that Scottsdale can amend the complaint to include allegations of subsequent letters. Leave is freely granted especially at the outset of the case.  In addition, given the content of the letters, a plausible claim can be stated.

*Beach & Tennis Club, Inc. v. Indus. Indem. Co.*, 9 Cal. 4th 27, 37 (Cal. 1995). An insurance policy is interpreted, like all contracts, to effectuate the mutual intent of the parties. *Silicon Valley Bank v. N.H. Ins. Co.*, 203 F. Supp. 2d 1152, 1156 (C.D. Cal. 2002) (citing Cal. Civ. Code § 1636). "If contractual language is clear and explicit, it governs." *Bank of the W. v. Super. Ct.*, 2 Cal. 4th 1254, 1264 (1992). The interpretation of an insurance policy is determined, if possible, solely from the term of the policy and their clear and explicit meaning understood in their ordinary and popular sense. *Waller*, 11 Cal. 4th at 18. "'In seeking to ascertain the ordinary sense of [undefined] words [in an insurance policy], courts in insurance cases regularly turn to general dictionaries.'" *Laurel v. Allstate Ins. Co.*, No. CV 09- 3990 SVW (CTx), 2010 WL 11235326, at *8 (C.D. Cal. Feb. 3, 2010) (quoting *Scott v. Cont'l Ins. Co.*, 44 Cal. App. 4th 24, 29-30 (Cal. Ct. App. 1996)). "'Indeed, courts in both insurance and noninsurance contexts regularly use the phrase 'ordinary dictionary definition or meaning' as if 'ordinary' were synonymous with 'dictionary.''" *Id.* "'It is thus safe to say that the 'ordinary' sense of a word is to be found in its dictionary definition.'" *Id.*

Conduct Exclusion Provision. The Policy provides that Scottsdale shall not be liable for "Loss" under the D&O Coverage Section under the Conduct Exclusion on account of any "Claim":

> [A]lleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any dishonest, deliberately fraudulent or criminal act of an Insured; **provided, however this exclusion f.i. shall not apply unless and until there is <u>a final judgment</u> against such Insured as to such conduct (including the exhaustion of all appeals, petitions and rehearings in such Claim).** When f.i. applies, the Insured shall reimburse Scottsdale for any Costs, Charges or Expenses.

(Dkt. No. 1 at 4, ¶ 17 (emphasis supplied).)

Analysis. Fineman asserts that, as a matter of law, the exclusion cannot apply because: (1) there was no final judgment in the underlying arbitration; and (2) the arbitrator never found "dishonest, intentional, fraudulent, or criminal conduct" sufficient to trigger the exclusion.

First, with respect to the issue of final judgment, Scottsdale avers that there was a final judgment for purposes of the policy because California courts treat a final arbitration award as a final adjudication of disputed facts. Specifically, some courts in California have recognized that a

8

final arbitration award constitutes a final adjudication of disputed facts.  *See Vitolo v. Bloomingdale's Inc.*, No. CV 09-7728 DSF (PJWx), 2017 WL 6883867, at *1 (C.D. Cal. Oct. 19, 2017) ("[A] final arbitration award after an adjudicatory process qualifies as a final adjudication under California law."); *Haworth v. Super. Ct.*, 50 Cal. 4th 372, 380 (2010) ("It is the general rule that parties to a private arbitration impliedly agree that the arbitrator's decision will be both binding and final . . . . Generally, in the absence of a specific agreement by the parties to the contrary, a court may not review the merits of an arbitration award."); *Hightower v. Super. Ct.*, 86 Cal. App. 4th 1415, 1432 (2001) ("An arbitration decision is final and conclusive because the parties have agreed it be so. By ensuring that an arbitrator's decision is final and binding, courts simply assure that the parties receive the benefit of their bargain."); *Luce, Forward, Hamilton & Scripps, LLP v. Koch*, 162 Cal. App. 4th 720, 728 (2008) ("California favors arbitration as a speedy means of settling disputes, and to facilitate the policy it is essential that arbitration judgments are binding and final.").

Scottsdale does not persuade.  The exclusion language explicitly requires a "final judgment" and not merely a "final adjudication of disputed facts."  Here, there was no final judgment in the underlying action because the case settled and the arbitration award was never subsequently confirmed by a court.  *See Kelley v. Bredelis*, 45 Cal. App. 4th 1819, 1827 (1996) (suggesting that settling a case prevents an arbitration award from becoming a final judgment); *Sartor v. Super. Ct.*, 136 Cal. App. 3d 322, 328 (1982) ("[A] judgment confirming the arbitration award constitutes a final judgment on the merits." (citing Civ. Proc. Code § 1287.4)).  Indeed, some courts have found even the lower "final adjudication" standard not satisfied where a case has settled.  *See Twin City Fire Ins. Co. v. SLRA Inc.*, No. 19-cv-06131-JSC, 2020 WL 3035793, at *6 (N.D. Cal. June 5, 2020) (holding that SEC Consent Order is not a "final adjudication" under a conduct exclusion that only required a "final adjudication,"); *Silicon Storage Tech., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 13-CV-05658-LHK, 2015 WL 12990244, at *2-3 (N.D. Cal. Nov. 19, 2015) (settlement of a case precludes an insurer from applying a conduct exclusion that only requires a "final adjudication.").  Thus, in light of the fact that exclusions are generally interpreted against the insurer and construed narrowly when ambiguous, Scottsdale does

9

United States District Court
Northern District of California

1    not cannot show that there is a "final judgment" as required under the language of the Conduct

2    Exclusion.

3    　　　　　Accordingly, the Court **GRANTS** the motion to dismiss as to Count One on this ground.

4    　　　　　Second and alternatively, Fineman avers in his motion to dismiss that Count One fails

5    because the arbitrator did not find an "intentional, fraudulent, or criminal conduct" attributable to

6    Fineman in the underlying arbitration.[4]  Fineman also highlights that negligent misrepresentation,

7    as found by the arbitrator, is not predicated on dishonesty under California law.  While Scottsdale

8    concedes that the arbitrator did not make any such findings regarding "intentional, fraudulent, or

9    criminal conduct" in the underlying arbitration, it claims that the arbitrator's conclusions could

10   support a finding that Fineman was acting in a "dishonest" manner.  Specifically:

11   　　　　　Scottsdale focuses on the Arbitrators findings that Fineman made several

12   misrepresentations to the Haffners, including: (1) "a written report about the company's claims to

13   success, including plans to start clinical trials of Noscapine in 2016 and KineMed's growth and

14   liquidity prospects," which plans "KineMed did not have the funds needed to carry out;" and

15   (2) failing to tell the Haffners of other adverse developments, including that "Loar, the CFO, had

16   long lost confidence in the company, MidCap required weekly reporting calls, Fineman had

17   retained bankruptcy counsel, and layoffs had occurred."

18   　　　　　Scottsdale does not persuade.  Negligent misrepresentation under California law is not

19   based on dishonesty under California law as "[a] defendant who makes false statements 'honestly

20   believing that they are true, but without reasonable ground for such belief, . . .  may be liable for

21   negligent misrepresentation. . . .'" *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158

22   Cal. App. 4th 226, 243 (2007).  Here, the arbitrator ultimately found that:

23   　　　　　　　　　Fineman *honestly* believed in KineMed as a company and its

24   　　　　　　　　　potential for growth and prosperity. However, his overzealousness

25   　　　　　　　　4  Fineman's arguments that a negligent misrepresentation renders the policy illusory is
     disregarded by the Court as it was only raised for the first time in the reply.  *See Zamani v.*
26   *Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised
     for the first time in a reply brief."); *Rodman v. Safeway Inc.*, 125 F. Supp. 3d 922, 930 n.6 (N.D.
27   Cal. 2015) ("Generally, the Court does not consider new arguments made for the first time in a
     reply brief.").
28

about KineMed's prospects while speaking with the Haffners is without question, particularly in August 2015 and by that time despite all of his efforts and high hopes he was 'without reasonable grounds' to assert what amounted to his 'super selling.' At that time, Fineman did make negligent misrepresentations to the Haffners about the company, which he did not have a reasonable basis to believe were true, given Loar's resignation, MidCap's concerns and his recent consultation with bankruptcy counsel.

(Dkt. No. 1-3 (Ex. 3 to Compl.) at 26 (emphasis supplied).)  Here, given that Scottsdale does not and cannot show that the underlying decision by the arbitrator found dishonesty attributable to Fineman, and that negligent misrepresentation is not necessarily based on dishonest conduct, the Court agrees that  Scottsdale cannot assert a claim under this exclusion because there is no dishonest act found by the arbitrator upon which the conduct exclusion can be based.

Accordingly, the Court alternatively **GRANTS** the motion to dismiss as to Count One on this ground.

### 3.    Count Two: Bodily Injury Exclusion

Next, Fineman asserts that Count Two, requesting declaratory judgment as to the application of the Bodily Injury Exclusion, should be dismissed because Scottsdale waived its right to the exclusion by failing to mention this exclusion specifically in the ROR letter.[5]

Fineman does not persuade.  As previously discussed: in California, "[a] reservation of rights does not need to specifically address each coverage defense, but can be general," and the failure to identify each and every specific coverage defense does not constitute a waiver of that defense so long as the carrier generally reserves its rights.  *Marentes*, 224 F. Supp. 3d at 913. Moreover, issues of waiver and estoppel are generally inappropriate for resolution at the motion to dismiss stage.  Here, Scottsdale's ROR letter, asserting a general reservation of its rights, is sufficient under California law for purposes of pleading.

Accordingly, the Court **DENIES** the motion to dismiss as to Count Two.

---

[5]  Fineman also moved to dismiss Count Two on the ground that the monetary damages attributable to emotional distress, normally excluded under the Bodily Injury Exclusion, resulted from a breach of fiduciary duty claim.  Fineman failed to respond in his reply to arguments made in opposition by Scottsdale, and later confirmed at oral argument that he was conceding this ground.  Thus, the Court does not address this ground in this Order.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 4.    *Count Three: Uncovered Loss*

Fineman moves for dismissal of Count Three, which requests declaratory judgment as to uncovered loss.  More specifically, Scottsdale requests that the Court:

> [D]eclare that there is no coverage under the Policy for any and all portions of the Settlement Sum paid by Scottsdale in settlement of the Underlying Action and Arbitration that constitute uncovered loss under the Policy and/or at law.

(Dkt. No. 1 at 11, ¶ 60.)

Fineman argues that the Settlement reached by the parties is a covered loss, and that Count Three should be dismissed. The Court disagrees.  First, in light of the Court's ruling that the second claim, regarding the Bodily Injury Exclusion, survives, the question of the scope of an uncovered loss remains, at least as to that count.  On that basis alone, the motion can be denied.

However, in light of the arguments, the Court proactively addresses whether Haffner's attorneys' fees are appropriately an uncovered loss. Relevant here, the Policy specifically excludes from the definition of "Loss" "any amounts owed or paid to one or more securities holders of [KineMed] under any written or express contract or agreement." (Dkt. No. 1 at 4, ¶ 15.)  In the arbitration, the Haffners alleged that they were provided a series of documents, including a Subscription Purchase Agreement ("SPA"), prior to investing in KineMed.  (Dkt. No. 1-3 at 19-20.)  The SPA provided that California substantive law governed any arbitration brought under the SPA, and section 5.6 of the SPA stated that an arbitrator had the right to award damages, attorneys' fees, and costs, among other remedies.  (*Id.* at 34-35.)  In interpreting this language, the arbitrator concluded that "[t]he only reasonable interpretation of §5.6 is that the parties intended to grant the arbitrator the discretion to award attorney fees in any disputes that related to or arose out of the Subscription Purchase Agreement."  (*Id.* at 35.)  Ultimately, the arbitrator held that she was "authorized to award equitable relief under the [SPA] and . . . that the Haffners are entitled to equitable relief in the form of reimbursement of attorney fees."  (*Id.* at 40.)

Here, Scottsdale avers that because Fineman's obligation to pay the Haffners' attorneys' fees expressly arose from such a written agreement, and accordingly, the attorneys' fees do not constitute covered Loss under the Policy.  In response to Scottsdale, Fineman points out that any

1   insurance policy provision that takes away or limits coverage reasonably expected by the

2   policyholder must be "conspicuous, plain, and clear" to be enforceable.  *Haynes v. Farmers*, 32

3   Cal. 4th 1198, 1204 (2004) ("The burden of making coverage exceptions and limitations

4   conspicuous, plain and clear rests with the insurer."); *see also Steven v. Fidelity & Casualty Co*.,

5   58 Cal. 2d 862, 878 (1962).  "While the insurer has every right to sell insurance policies by

6   methods of mechanization, and present-day economic conditions may well justify such

7   distribution, the insurer cannot then rely upon esoteric provisions to limit coverage. If it deals with

8   the public upon a mass basis, the notice of noncoverage of the policy, in a situation in which the

9   public may reasonably expect coverage, must be conspicuous, plain and clear."  *Id.* at 878.  Thus,

10  according to Fineman, because the Policy did not explicitly exclude attorneys' fees, attorneys' fees

11  must be a covered loss under the Policy.

12       Fineman does not persuade.  The issue is not that the Policy failed to exclude attorneys'

13  fees specifically from coverage, it is that the attorneys' fees *as awarded here* are *not* a covered

14  loss under the definition of the Policy.  The arbitrator noted that the award of attorneys' fees

15  derived from the SPA; the payment of monies pursuant to a separate agreement is *specifically*

16  excluded from the Loss definition under the Policy.[6]  Thus, the fee award is simply excluded as a

17  covered loss because the award was issued only under the separate agreement by the arbitrator.

18       Accordingly, the Court **DENIES** the motion to dismiss as to Count Three on this ground as

19  well.

20       **B.      Defendant Scottsdale Insurance Company's Motion to Dismiss Counterclaim**

21       Scottsdale moves to dismiss Counts One, for breach of contract, and Two, breach of the

22  implied covenant of good faith and fair dealing, of Fineman's counterclaims.  The Court addresses

23  each in turn.

24       *1.      Count One: Breach of Contract*

25       In general, in a breach-of-contract action, the party asserting the claim must "'allege the

26

27       _____

         [6]  Indeed, Fineman's above cited authority would be more persuasive had the arbitrator
28  made a more generalized statement that she was awarding attorneys' fees.

United States District Court
Northern District of California

specific provisions in the contract creating the obligation the defendant is said to have breached.'"

*In re Anthem Data Breach Litig.*, 162 F. Supp. 3d 953, 978 (N.D. Cal. 2016); *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) ("In an action for breach of a written contract, a plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached.").

Here, Scottsdale avers that Fineman has neither alleged any breach of the policy because Fineman fails to identify a provision that was breached, and that Fineman has not suffered any damages because Scottsdale did in fact provide Fineman a defense in the underlying action, and further paid the amount for the Settlement.  Fineman responds that Scottsdale breached the policy by (1) refusing to indemnify the Arbitration Award; (2) misrepresenting the terms of the Policy; (3) breaching the contractual duty to settle; and (4) failing to inform Fineman immediately of his right to Section 2860 Counsel.  Fineman further identifies that he suffered emotional damages based on these identified breaches, as well as attorneys' fees paid to his coverage counsel for litigating in this action.

Fineman does not persuade.  In short, Fineman's counterclaim is devoid of any citation to the Policy that has been breached.  Indeed, Fineman's identified basis demonstrate that the claim, as pled, fails to state a claim for relief:

First, with regard to Scottsdale's refusal to indemnify the Arbitration Award, the main thrust is that Scottsdale did not pay the award immediately, but the Policy itself does not impose any such temporal limitation (e.g. requiring "immediate" action).  Fineman's allegations otherwise confirm that Scottdale did eventually pay the Arbitration Award.

Second, Fineman fails to identify a specific provision of the Policy that Scottdale misrepresented.  However, even if Scottdale had in fact misrepresented a provision in the Policy, there is nothing that would suggest that such a misrepresentation would be a breach of the Policy.

Third, Fineman's counterclaim acknowledges that Scottsdale did in fact pay the Arbitration Award and did agree to settle the underlying action.  Fineman's cited authority is inapposite where there is no allegation that: (i) Scottsdale used fear to coerce Fineman to settle, *see J.B. Aguerre, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 59 Cal. App. 4th 6, 14 (1997) (where the

United States District Court
Northern District of California

14

insurer used the insured's fear of punitive damages to coerce the insured to contribute to a

settlement); (ii) Scottsdale's alleged failure caused any damage to reputation or any business

goodwill,  *see Bodenhamer v. Superior Ct.*, 192 Cal. App. 3d 1472, 1478-1479 (1987) (insurer's

failure to settle can support a breach-of-contract claim where the insurer's failure to settle caused

damage to the insured's business goodwill); (iii) Scottsdale settled without Fineman's consent, *see*

*Barney v. Aetna Cas. & Sur. Co.*, 185 Cal. App. 3d 966, 978 (1986) (insured's breach-of-contract

claim was premised upon the insurer having settled without the insured's consent); and (iv) there

was damage to Fineman's credit score, *see  Larraburu Bros., Inc. v. Royal Indem. Co.*, 604 F.2d

1208, 1215 (9th Cir. 1979) (insurer breaches an insurance policy when the insurer delays settling

where delay caused damage to insured's credit score).

Fourth, the right to Section 2860 Counsel is derived from a statutory remedy, and not by

the Policy or contract itself.  *See, e.g.* Cal. Civ. Code § 2860(a) (establishing when a party has a

right to Section 2860 Counsel).

Moreover, with respect to damages, Fineman's arguments as to emotional damages are

without merit.  Under California law, damages for emotional distress are generally not recoverable

on a claim for breach of contract.  *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th

503, 515-16 (1994) (explaining the distinction between contract and tort claims and the distinct

damages that may be awarded for each, and stating: "Consistent with the distinctions just

discussed, damages for mental suffering and emotional distress are generally not compensable in

contract actions"); *see also Rudio v. Credit Control, LLC*, No. 16-cv-03003-JD, 2018 WL

4772303, at *2 (N.D. Cal. Oct. 1, 2018) (finding that the plaintiff failed to "plausibly allege[] the

damages element" of a breach-of-contract claim when she claimed "anxiety, embarrassment, and

frustration," which was "not enough for a contract claim").  The rule that emotional-distress

damages are generally not recoverable on a claim for breach of contract has been applied in the

insurance context where an insured sues an insurer for breach of the policy and seeks to recover

damages for emotional distress.  *See Bamberger v. Marsh USA, Inc.*, 699 F. App'x 649, 650 (9th

Cir. 2017) (granting summary judgment on the breach-of-contract claim because the insurer

reimbursed the insured for its contribution to the settlement and citing *Applied Equipment* for the

proposition that "[e]motional distress damages are generally unavailable in contract actions.");

*Everett Assocs. v. Transcont'l Ins. Co.*, 159 F. Supp. 2d 1196, 1207 (N.D. Cal. 2001), judgment

entered, request granted, stay granted, No. C-97-4308 SC, 2001 WL 263294 (N.D. Cal. Mar. 15,

2001) ("This Court finds that California law does not support recovery of emotional distress

damages where [an] insurer breached only its duty to defend, but not the implied covenant.").

Finally, with respect to the attorneys' fees incurred in this litigation, the law is clear that, in

general, attorneys' fees that Fineman allegedly incurred or will incur in connection with litigating

the coverage issues at issue in this action are not recoverable under the policy.  *See Brandt v.

Super. Ct.*, 37 Cal. 3d 813, 815 (1985); *Power Standards Lab, Inc. v. Fed. Express Corp.*, 127 Cal.

App. 4th 1039, 1045-46 (2005).  Thus, absent additional detailed allegations, Fineman has not

sufficiently alleged a claim for breach of contract.

Accordingly, the Court **GRANTS** the motion to dismiss as to this claim. The Court provides

**LEAVE TO AMEND** with caution to follow Rule 11: in order to restate such a claim, Fineman must

identify the specific provisions of the Policy.  Specifically, Fineman must detail by section or

reference to the Policy was has been precisely breached, and further identify what damages flow

from the breach so that the Court can analyze more appropriately analyze the claim.

> 2.    *Count Two: Breach of the Implied Covenant of Good Faith and Fair
>        Dealing*

The essential elements of a cause of action for breach of the implied covenant of good faith

and fair dealing are: (1) the withholding of benefits that are due under the policy; and (2) the

withholding of such benefits unreasonably or without proper cause.  *Waller*, 11 Cal. 4th at 35-36;

*Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990).

The implied covenant of good faith and fair dealing "prevents a party from acting in bad

faith to frustrate the contract's *actual* benefits."  *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 353

n.18 (2000) (emphasis in original).  The implied covenant is "a *supplement* to the express

contractual covenants, [which exists] to prevent a contracting party from engaging in conduct

which (while not technically transgressing the express covenants) frustrates the other party's rights

to the benefits of the contract."  *Love*, 221 Cal. App. 3d at 1153 (emphasis in original).  "Absent [a

United States District Court
Northern District of California

16

primary] contractual right [that has been breached] . . . the implied covenant has nothing upon which to act as a supplement, and should not be endowed with an existence independent of its contractual underpinnings." *Waller*, 11 Cal. 4th at 36 (internal quotation marks and citation omitted).  "[A] bad faith claim cannot be maintained unless policy benefits are due . . . . [This] legal principle is based on general contract law and the long-standing rule that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Id.* (citation and quotation marks omitted).  "If a party does not have any rights under an agreement in the first place, there are no contractual rights to injure." *Travelers Cas. Ins. Co. of Am. v. Mesriani & Assocs.*, No. CV-14- 7898, 2015 WL 12746710, at *5 (C.D. Cal Apr. 1, 2015).

Here, in light of the Court's prior analysis on the breach of contract claim, Fineman does not appropriately identify a withholding of a benefit by Scottsdale under the Policy, and thus, Fineman fails to sufficiently state claim for relief.[7]  Accordingly, the Court **GRANTS** Scottsdale's

---

[7]  Fineman's separate argument, that the maintaining of this lawsuit by Scottdale against him evidences bad faith, does not persuade in light of the overwhelming nationwide authority to the contrary.  *See, e.g.*, *Old Republic Ins. Co. v. FSR Brokerage*, 80 Cal. App. 4th 666, 686-88 (2000) (holding that the bad faith claim failed as a matter of law where the insurer paid the benefits owed under the policy and then filed a lawsuit to recover some or all of the benefits paid to the insured because the bad faith claim was premised on the allegations in the complaint, which were protected by the litigation privilege in Civil Code section 47); *Great Am. E & S Ins. Co. v. Kouw Pinnq Enter. Co.*, No. EDCV 13-00715-VAP (DTBx), 2013 WL 5461911, at *6 (C.D. Cal. Sep. 20, 2013) (quoting *Dalrymple v. United Services Auto. Ass'n*, 40 Cal. App. 4th 497, 519 (1995) ("The mere filing of an action to declare the insurer's rights and duties relative to an insurance policy cannot form the basis of breach of the duty of good faith and fair dealing.")); *Timberlake Constr. Co. v. U.S. Fid. & Guaranty Co.*, 71 F.3d 335, 340 (11th Cir. 1995) ("The insurer does not breach the duty of good faith by . . . litigating a dispute with its insured if there is a legitimate dispute as to coverage or amount of the claim, and the insurer's position is reasonable and legitimate."); *Slater v. Liberty Mut. Ins. Co.*, No. 98-1711, 1999 WL 178367, at *2 (E.D. Pa. Mar. 30, 1999) ("The Court noted that the alleged bad faith in conducting discovery was 'independent of the contract of insurance,' and did not arise from the parties' 'insurer-insured relationship' but from their 'relationship as litigants.'"); *Parsons v. Allstate Ins. Co.*, 165 P.3d 809, 817 (Colo. Ct. App. 2006) (recognizing the limited relevance of litigation conduct by an attorney to a bad-faith claim); *Int'l Surplus Lines Ins. Co. v. Univ. of Wyo. Research Corp.*, 850 F. Supp. 1509, 1529 (D. Wy. 1994) (recognizing that conduct by counsel for the insurer and other claims of "litigation misconduct" do not support a bad-faith claim); *Palmer by Diacon v. Farmers Ins. Exch.*, 261 Mont. 91, 121-24 (1992) ("In general, an insurer's litigation tactics and strategy in defending a claim are not relevant to the insurer's decision to deny coverage. Indeed, if the insured must rely on evidence of the insurer's post-filing conduct to prove bad faith in denial of coverage,

motion to dismiss as to this claim.  The Court provides **LEAVE TO AMEND** with caution again to follow Rule 11: in order to restate such a claim, Fineman must identify the actual benefit due.  In other words, Fineman must identify the benefit that was unreasonably withheld or withheld without proper cause so that the Court can adequately analyze the claim.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Fineman's motion to dismiss, and **GRANTS** Scottsdale's motion to dismiss.  As detailed above, Scottsdale shall file an amended complaint within **twenty-one (21) days** of the date of this Order.  Fineman shall thereafter file a response, including his counterclaim, within **twenty-one (21) days** from the date of the filing of the amended complaint.  Scottdale shall thereafter respond to the counterclaim, if any, within **fourteen (14) days**.

Further, the Court sets a case management conference to be held **Monday, April 19, 2021** at **9:00 AM PDT** via the Zoom platform. The parties are instructed to comply with the Court's Standing Order requiring the submission of a joint case management statement five (5) business days prior to the conference.

This Order terminates Docket Numbers 21 and 24.

**IT IS SO ORDERED.**

Dated: February 5, 2021

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**

questions arise as to the validity of the insured's initial claim of bad faith.").