HESS • BOWER • ADAMS-HESS, PC
f/k/a Adleson, Hess & Kelly, APC
Randy M. Hess (SBN 88635)
Nicole S. Adams-Hess (SBN 286632)
2105 South Bascom Avenue, Suite 200
Campbell, California 95008
Telephone:   (408) 341-0234
Facsimile:    (408) 341-0250
rhess@hbalawgroup.com
nadamshess@hbalawgroup.com

Attorneys for Defendant/Counter-Claimant
DAVID FINEMAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, an Ohio corporation,<br><br>Plaintiff,<br><br>v.<br><br>DAVID FINEMAN, a California resident,<br><br>Defendant.<br><br>DAVID FINEMAN, a California resident,<br><br>Counter-Claimant,<br><br>v.<br><br>SCOTTSDALE INSURANCE COMPANY, an Ohio corporation, and DOES 1-50,<br><br>Counter-Defendants. | Case No.: 4:20-cv-00368-YGR<br><br>Matter Assigned to Yvonne Gonzalez Rogers<br><br>**DEFENDANT/COUNTER-CLAIMANT DAVID FINEMAN'S FIRST AMENDED COUNTERCLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>(Jury Trial Demanded) |

Defendant/Counter-Claimant DAVID FINEMAN for his First Amended Counterclaim against plaintiff SCOTTSDALE INSURANCE COMPANY alleges as follows:

**I.**

**INTRODUCTION**

1. This insurance coverage action arises out of Scottsdale Insurance Company's ("Scottsdale") egregious betrayal of its insured, David Fineman. After agreeing to defend him, and ultimately paying a settlement under a Director's and Officer's policy that specifically provides coverage for the claims for which a private arbitrator found him liable, Scottsdale now seeks reimbursement from Mr. Fineman, individually, of every penny it spent in his defense and settlement, over $2,000,000. Such conduct is not supported by any rendition of the facts or law, and it has and continues to seriously harm Mr. Fineman.

2. Mr. Fineman, Chief Executive Officer of innovative biomedical company KineMed, Inc., (KineMed) was sued as a defendant in the civil action entitled *Chad Gold v. David M. Fineman* in the Los Angeles County Superior Court Case No. SC125963 (the "Underlying Action"), for alleged actions he undertook on behalf of KineMed. Mr. Fineman was sued individually instead of KineMed as KineMed had filed for bankruptcy.

3. Mr. Fineman timely tendered the lawsuit to insurer Scottsdale. The Underlying Action was submitted for arbitration, and Scottsdale agreed to defend Fineman in the Underlying Action under a reservation of rights. Despite the clear existence of coverage, Scottsdale wrongfully rejected multiple opportunities to settle the Underlying Action for a reasonable amount within policy limits, choosing instead to subject its insured to an arbitration award against him. After the Arbitrator issued her award, Scottsdale then wrongfully delayed in paying any part of it to the underlying claimants despite findings that Mr. Fineman's conduct was, at worse, negligent, and covered by the Scottsdale policy.

4. After the threat of underlying claimants moving to have the arbitration award entered as a civil judgment against Mr. Fineman, Scottdale finally, after a delay of months, and a post-arbitration mediation, paid a confidential settlement to resolve the Underlying Action. However, due to Scottsdale's unreasonable delay in settling the case, Mr. Fineman was forced to expend significant sums paying his insurance coverage counsel to fight for

the policy benefits already owed to him, and to avoid a civil judgment being recorded against him. Mr. Fineman continues to incur attorney's fees and costs contesting Scottdale's unfounded reimbursement action to recoup the settlement payment, along with all defense fees and costs paid from him, despite conclusive evidence of coverage under the Policy and Scottsdale's consistent failure to act in good faith while handling the claim.

## II.

## JURISDICTION AND VENUE

5. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the citizenship of the parties is diverse.

6. The Court also has subject matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. §1367(a) in that the Court has original jurisdiction over the claims filed by Counter-defendant Scottsdale. The claims contained in this Counterclaim are so related to the claims in the original action that the Counterclaim forms part of the same "case or controversy" under Article III of the United States Constitution. As a result, this Court also has supplemental jurisdiction over the Counterclaim under §1367(a), and because there is complete diversity of citizenship between the counterclaimant and the counter-defendant.

7. The amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2).

## III.

## THE PARTIES

9. Counterclaimant David Fineman, is, and at all relevant times was, a resident in the County of Alameda, California. Fineman was at all relevant times an insured under the policy hereinafter referenced.

10. Upon information and belief, counter-defendant Scottsdale Insurance Company was, and is, an insurance company doing business as an insurer and delivering insurance policies within the State of California, and was, and is, a corporation authorized

to do business and doing business under the laws of the State of California at all relevant times.

11. Counterclaimant is ignorant of the true names and capacities of defendants sued herein as Does 1 through 50, inclusive, and therefore Counterclaimant sues these defendants by such fictitious names. Counterclaimant will amend this counterclaim to allege their true names and capacities when they are ascertained. Counterclaimant is informed and believes and thereon alleges that each of the fictitiously-named defendants is responsible and liable in some manner for the occurrences and/or conduct herein alleged, and/or is responsible or liable under the policy of insurance referenced herein, and that Counterclaimant's damages as herein alleged were proximately caused in whole or in part by said fictitiously-named defendants' conduct or liability, as an insurer, agent or otherwise.

12. Counterclaimant is informed and believes and thereon alleges that at all times herein mentioned, defendants and each of them were acting as the agents, servants, successors, predecessors, principals, parents, subsidiaries, joint venturers, joint tortfeasors, co-conspirators, and employees of each other, and were acting within the full course and scope of said relationship with full knowledge, permission, consent and ratification, either expressed or implied, of each of the other said named defendants.

## IV.

## THE INSURANCE POLICY

13. Scottsdale issued the Business and Management Indemnity policy number EKS3164350 ("The Policy") to KineMed, for the policy period of August 24, 2015 to August 24, 2016. The Policy was duly issued and delivered to KineMed in the County of Alameda, State of California. KineMed caused premiums to be paid for the Policy and complied with all Policy terms and conditions. The Policy contains a coverage grant that provides:

> "The **Insurer** shall pay the **Loss** of the **Directors and Officers** for which the **Director and Officers** are not indemnified by the **Company** and which the **Directors and Officers** have become legally obligated to pay by reason of a **Claim** first made against

> the **Directors and Officers** during the **Policy Period**…. for any **Wrongful Act** taking place prior to the end of the **Policy Period**."
>
> …
>
> The **Insurer** shall pay the **Loss** of the **Company** for which the **Company** has indemnified the **Directors and Officers** and which the **Directors and Officers** have become legally obligated to pay by reason of a **Claim** first made against the **Directors and Officers** during the **Policy Period**… for any **Wrongful Act** taking place prior to the end of the **Policy Period**."
>
> …
>
> "The **Insurer** shall pay the **Loss** of the **Company** which the **Company** becomes legally obligated to pay by reason of a **Claim** first made against the Company during the **Policy Period**… for any **Wrongful Act** taking place prior to the end of the **Policy Period**."

14. The Policy defines the term "Claim" in pertinent part to mean: "a written demand against any **Insured** for monetary damages or non-monetary or injunctive relief", "a civil proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading" and "an arbitration proceeding against any **Insured** seeking monetary damages or nonmonetary or injunctive relief."

15. The Policy defines the term "Wrongful Act" broadly, as is customary in D&O policies:

> "Wrongful Act means any actual or alleged error, omission, misleading statement, misstatement, neglect, breach of duty or act allegedly committed or attempted by:
>
> a. any of the **Directors and Officers**, while acting in their capacity as such, or any matter claimed against any **Director and Officer** solely by reason of his or her serving in such capacity;
> b. any of the **Directors and Officers**, while acting in their capacity as a director, officer, trustee, governor, executive director or similar position of any **Outside Entity** where such service is with the knowledge and consent of the **Company**; and
> c. the **Company**, but only with respect to Insuring Clause 3. of this Coverage Section.

16. "Loss" means, in relevant part:

> "damages, judgments, settlements, pre-judgment or post-judgment interest awarded by a court, and **Costs, Charges and Expenses** incurred by **Directors and Officers** under Insuring Clauses 1. or 2. or the **Company** under Insuring Clause 3…"

17. "Insured" means the **Company** and **Directors and Officers.**

18. "Directors and Officers" means, in relevant part, any person who was, now is, or shall become a duly elected or appointed director, officer, or similar executive of the **Company**, or any member of the management board of the **Company**; and a person who was, is or shall become a full-time or part-time employee of the **Company**.

19. The Policy includes Endorsement No. 2, which purports to exclude coverage for "any dishonest, deliberately fraudulent or criminal act of an **Insured"** (hereafter the "Conduct Exclusion" or "Dishonesty Exclusion"). However, the Conduct Exclusion does not conclusively apply to preclude coverage in the Underlying Action. Further, the Policy provides that the Conduct Exclusion "shall not apply unless and until there is a final judgment against such **Insured** as to such conduct (including the exhaustion of all appeals, petitions and rehearings in such **Claim**.)"

## V.

## UNDERLYING ACTION

20. The Underlying Action was brought against Fineman by way of a civil action entitled *Chad Gold v. David M. Fineman* in the Los Angeles County Superior Court Case No. SC125963. The Underlying Action was submitted for arbitration, and amended to add Daniel and Patrick Haffner as claimants (the "Arbitration").

21. The Arbitration demand alleged that as CEO, Mr. Fineman made certain inaccurate and misleading statements to potential investors in KineMed. Mr. Fineman disputed all allegations against him.

22. During the Arbitration proceeding, the plaintiffs made reasonable settlement demands well within Scottsdale's Policy limit of $5,000,000. Fineman requested that, pursuant to an insurer's duties under California law, Scottsdale accept the reasonable settlement demands and agree to settle the Underlying Action within policy limits.

23. Notwithstanding Fineman's request, Scottsdale rejected the opportunities to settle, despite a likelihood that Fineman would likely face greater liability should a judgment ultimately be entered against him, placing its interests far ahead of its insured's.

## VI.

## ARBITRATION AWARD

24. Following Scottsdale's failure to accept a reasonable settlement of the Underlying Action within Policy limits, an Arbitration Award was issued against Fineman as to the claims brought by the Haffners. Mr. Fineman prevailed against all of Mr. Gold's claims. In the Arbitration Award, the arbitrator specifically found that Fineman did not act dishonestly, intentionally or fraudulently:

> "Claimants base their fraud claims on essentially the same facts as their misrepresentation claim. <u>However, the Arbitrator finds that Fineman's statements do not meet the scienter requirement</u>. When Fineman solicited the Haffners and Gold, he was genuinely optimistic about the company and had a genuine though flawed business plan to monetize the business's existing science. Although Fineman may have negligently misled the Haffners in late summer/early fall 2015, <u>none of the Claimants have demonstrated that Fineman lured them into investing by making intentionally false statements</u>. As a result, the Arbitrator finds that Claimants have failed to establish a cause of action for fraud." (Emphasis added.)

25. The arbitrator found that Fineman's alleged wrongful conduct did not amount to any fraudulent, dishonest or intentional misrepresentation. Rather, Fineman was determined to have had a "genuine though flawed business plan" and that Fineman "may have negligently misled the Haffners." Despite these findings, Scottsdale refused to pay for the Arbitration Award.

26. Scottsdale's interpretation of the Arbitration Award is unreasonable, as it entirely ignores the arbitrator's actual findings, namely that Fineman did not act dishonestly or intentionally.

27. Scottsdale's interpretation of its own Policy is also unreasonable. Fineman's conduct clearly does not arise to any dishonest, deliberately fraudulent or criminal act.

Second, the Policy states that the Conduct Exclusion shall not apply unless and until there is a final judgment against such **Insured** as to such conduct (including the exhaustion of all appeals, petitions and rehearings in such **Claim**.) This requirement of a final judgment has not been met, as the case settled, yet Scottsdale inappropriately relied on the Conduct Exclusion to deny coverage for the Arbitration Award.

28. Despite Scottsdale's position that the Conduct Exclusion precludes coverage, Scottsdale never advised and informed Fineman in its October 6, 2016 reservation of rights letter of his right to select independent counsel to represent him due to the conflict of interest created by Scottsdale's coverage position.

29. Ultimately, Fineman entered into a settlement agreement with plaintiffs in the Underlying Action. Fineman, after being forced to spend significant time and personal financial resources retaining coverage counsel, obtained an agreement from Scottsdale to pay for the settlement, and the Underlying Action was resolved.

## VII.

## THE INSURANCE DISPUTE

30. Scottsdale agreed to provide a defense (including issuing a reservation of rights letter to Mr. Fineman in response to the lawsuit filed by Chad Gold), recognizing that the claims constituted "Wrongful Acts" as defined by the Policy. Despite Scottsdale's purported position in its October 2016 correspondence that the Conduct Exclusion, and potentially other exclusions may preclude coverage, Scottsdale never advised Fineman of his right to obtain independent counsel.

31. Scottsdale, when presented with an opportunity to settle the Underlying Action for a reasonable amount within policy limits, wrongfully refused to do so. As a result, Fineman was subjected to further litigation and the issuance of an Arbitration Award against him. Despite the fact that the Arbitration Award is clearly covered under the Policy, Scottsdale again acted unreasonably by refusing to immediately indemnify the Arbitration Award, forcing its insured to spend significant personal resources to insurance coverage counsel to obtain benefits owed to him under the Policy. While Scottsdale

eventually paid for the settlement, resolving the Arbitration, it now wrongfully seeks to recoup all payments for the settlement and all defense fees and costs paid. Despite undeniable knowledge of its clear obligations to its insured, Scottsdale maliciously delayed and denied policy benefits owed to Mr. Fineman.

32. Scottsdale's position that it owes no defense or indemnity obligations to Mr. Fineman ignores the express terms of its own Policy, and disregards its duties under California law.

## FIRST CLAIM FOR RELIEF

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

33. Counterclaimant alleges and incorporates by reference each and every preceding paragraph in support of this claim for relief.

34. Even an insurer that pays the full limits of its policy will be liable for breach of the implied covenant of good faith and fair dealing if improper claims handling, misrepresentation of policy provisions, or unreasonable delay causes detriment to the insured.

35. A claim for breach of the implied covenant does not require that the policyholder first establish an express breach of a contractual provision. When benefits are due to the insured, delayed payment, tardy investigations, misrepresentation of coverage or oppressive claims handling all provide an independent basis for a breach of the implied covenant claim.

36. Counter-defendant breached the implied covenant of good faith and fair dealing by refusing to immediately indemnify the Arbitration Award, by wrongfully seeking reimbursement of covered defense fees and costs in the Underlying Action, among other breaches as set forth herein.

37. Counter-defendant breached the implied covenant of good faith and fair dealing by its unreasonable delay in settling the case and by it unreasonable delay in providing its insured with its coverage position as to the Haffner's claims in arbitration.

38. The Arbitration Award was issued on August 22, 2019. Scottsdale did not

immediately indemnify the Arbitration Award.

39. Moreover, Scottsdale breached the implied covenant of good faith and fair dealing by its unreasonable delay in denying indemnity coverage for the Arbitration Award. The California Insurance Regulations (10 C.C.R. § 2695.7(b)) require that an insurer notify its policyholder of a claim denial within thirty (30) days of receipt of the claim. Scottsdale did not notify its policyholder in writing that it intended to deny the entirety of the Arbitration Award until October 9, 2019 (Exhibit A), over thirty days after it received the Arbitration Award. Scottsdale did not settle the case until December 5, 2019, almost four months after the Arbitrator issued the final award. The unreasonable delay in doing so forced Mr. Fineman to incur significant fees and costs from his coverage counsel and emotional distress.

40. Scottsdale further breached the implied covenant of good faith and fair dealing in denying any indemnity coverage for the Arbitration Award. In doing so, Scottsdale relied upon the Dishonesty Exclusion, which is not applicable. Scottsdale took the erroneous position that the Dishonesty Exclusion applied, even though there was never any "final judgment," which is a predicate to the exclusion ever applying. Scottsdale also took the completely unsupportable position that a breach of fiduciary duty is a "dishonest" act. Such a position would have rendered the Policy illusory as the coverage grant specifically provides coverage for breaches of duty. Scottsdale's assertion that the Dishonesty Exclusion applied misrepresented the terms of that exclusion, as well as the coverage provided by the Policy. An insurer's attempt to deny coverage based on a contract interpretation that makes a policy illusory constitutes a breach of the implied covenant of good faith and fair dealing.

41. Scottsdale breached the implied covenant of good faith and fair dealing by its unreasonable delay in either paying the Arbitration Award or settling the case. In order to act in good faith, Scottsdale should have settled the matter or paid the Arbitration Award within thirty (30) days of the issuance of the Award (10 C.C.R. § 2695.7(h)). Scottsdale would have been able to reserve its rights to seek reimbursement from its insured, but its

failure to timely pay the Award or settle the case damaged the insured as he was required to pay his insurance coverage counsel, he suffered significant emotional distress, and was living in complete fear and under great emotional distress that a large civil judgment would be entered against him and that his house and property would have a judgment lien, he would be unable to refinance or sell his property and that his credit would be substantially damaged by entry of a judgment. Scottsdale's delay in paying the Arbitration Award breached the implied covenant of good faith and fair dealing.

42. Scottsdale breached the implied covenant of good faith and fair dealing by its conduct during the underlying litigation, leading Mr. Fineman to believe that he was protected and that Scottsdale would indemnify him against any adverse award when it never intended to do so. Scottdale did not warn Mr. Fineman of its plan to refuse to pay any award, or that it would take the position that a "breach of fiduciary duty" is not covered by the policy. Scottsdale did not obtain a waiver from Mr. Fineman of his right to independent counsel, which is required under Cal. Civ. Code § 2860. Mr. Fineman relied on Scottsdale and trusted that it would indemnify him against an Arbitration Award, and did not seek out independent defense counsel because of the assurances made by Scottsdale.

43. Scottsdale breached the implied covenant of good faith and fair dealing by refusing to indemnify any portion of the Arbitration Award (See Exhibit A) when it is undisputed that at least a portion of it was covered.

44. Scottsdale breached the implied covenant of good faith and fair dealing by refusing to communicate its coverage position in writing regarding the Haffner arbitration until after the arbitration hearing had already occurred, and in response to a letter from Mr. Fineman's coverage counsel. Mr. Fineman was unable to take steps to protect himself before the arbitration hearing until after it had already occurred, which was too late.

45. In addition, counter-defendant has breached the implied covenant of good faith and fair dealing owed to Counterclaimant by undertaking, among other wrongful acts, the following conduct:

a. Unreasonably failing to agree to advise and inform Fineman of his right to independent counsel in its October 6, 2016 reservation of rights letter for the civil action filed by Chad Gold when Scottsdale reserved its rights as to the Conduct Exclusion;

b. Unreasonably failing to accept reasonable settlement offers to resolve the Underlying Action within Policy limits before the final arbitration award was issued;

c. Unreasonably subjecting Mr. Fineman to further litigation and an Arbitration Award after having the opportunity to reasonably settle the Underlying Action;

d. Unreasonably failing to immediately indemnify Mr. Fineman when the Arbitration Award was issued;

e. Unreasonably failing to conduct a full, fair, and thorough investigation of all bases of its insured's claim and tender of defense;

f. Unreasonably failing to give its insured's interests at least as much consideration as its own interests;

g. Unreasonably failing to diligently search for and consider evidence which would have supported payment of defense fees and costs and immediate payment of the settlement;

h. Unreasonably forcing its insured Mr. Fineman to expend significant time and personal funds to retain coverage counsel to obtain policy benefits owed;

i. Unreasonably ignoring the express findings of the arbitrator in the Arbitration Award that Mr. Fineman did not act fraudulently or intentionally in order to manufacture false rationales to support its erroneous coverage positions;

j. Misrepresenting insurance policy terms in order to manufacture false rationales to support its erroneous coverage positions, which rendered the policy's broad coverage grant illusory;

k. Unreasonably subjecting Mr. Fineman to significant, anxiety, humiliation, and emotional distress resulting from Scottsdale's oppressive claims handling; and

l. Other wrongful conduct to be proven at trial.

46. As a proximate result of the unreasonable and bad-faith conduct of Counter-defendant, Counterclaimant was compelled to retain legal counsel to obtain the benefits due under the policies. Therefore, Counter-defendant is liable to Counterclaimant for those attorney's fees reasonably necessary, and incurred and/or paid by Counterclaimant in order to obtain benefits under the policies in a sum to be determined at the time of trial.

47. Counter-defendant acted in a conscious disregard of Counterclaimant's rights and interests, immediately indemnify the Arbitration Award, and its ruthless attack on its insured for reimbursement when the Policy expressly provides coverage for negligent breaches of duty, among other malicious conduct as set forth herein and incorporated into this paragraph by reference. Scottsdale and its agents made Fineman believe that he would be protected if he lost at arbitration, and was actively discouraged from hiring independent counsel. Fineman relied on the statements made by Scottsdale claims adjustors in believing that Scottsdale would indemnify an adverse award. Counterclaimant is informed and believes and thereon alleges that Scottsdale acted fraudulently in communicating that it would protect Fineman against an adverse award when it never intended to do so. Counter-defendant acted willfully to deprive Counterclaimant of policy benefits in favor of their own financial interests. Counterclaimant is informed and believes and thereon alleges that Scottsdale has a pattern and practice of refusing to settle D&O claims and in the event of an adverse arbitration award or verdict, wrongfully denies all indemnity coverage when all or some of the award is covered. Counter-defendant's conduct constitutes (1) malice, (2) oppression, or (3) fraud within the meaning of California Civil Code § 3294. Accordingly, Counterclaimant seeks an award of punitive damages in an amount appropriate to punish past conduct and deter Counter-defendant from continuing said conduct.

48. Counter-defendant's conduct described herein was undertaken by the corporate officers or managing agents of Counter-defendant, who were responsible for claims supervision and operations, underwriting, communications and/or decisions. The aforementioned conduct of said managing agents and individuals was therefore

undertaken on behalf of the corporate Counter-defendant. Said corporate Counter-defendant further had advance knowledge of the actions and conduct of said individuals whose actions and conduct were ratified, authorized and approved by managing agents.

49.     Counter-defendant's unreasonable conduct is the legal cause of the substantial harm and damage Counterclaimant suffered, and continues to suffer, including, but not limited to, defense costs, attorney's fees, settlement payments, interest, and other economic and consequential damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Counterclaimant prays for judgment against Counter-defendant as follows on all counts:

1.      For all damages proximately caused by Counter-defendant's conduct;

2.      For reasonable attorneys' fees, expert fees, witness fees, and costs of litigation incurred and/or paid by Counterclaimant to obtain the policy benefits in an amount to be determined at trial;

3.      Emotional distress damages;

4.      Punitive and exemplary damages in an amount appropriate to punish or set an example of Counterclaimant.

5.      For costs of suit;

6.      For such other and further relief as the Court deems just and proper.

Dated: March 19, 2021                    HESS • BOWER • ADAMS-HESS, PC

By:  */s/ Nicole S. Adams-Hess*
Randy M. Hess
Nicole S. Adams-Hess
Attorneys for Defendant/Counter-Claimant
David Fineman

# EXHIBIT A



**BAILEY | CAVALIERI**

KEITH A. LITTLE
klittle@baileycav.com
614.229.3264

October 9, 2019

Randy M. Hess (rhess@ahk.com)         **VIA E-MAIL**
Adleson Hess & Kelly
577 Salmar Avenue, Second Floor
Campbell, CA  95008

Re:  Insurer:      Scottsdale Insurance Company
     Insured:      Kinemed, Inc.
     Policy No.:   EKS3164350
     Matter:       Chad Gold, et al.
     File No.:     1723445

Dear Mr. Hess:

As you know, we represent Scottsdale Insurance Company ("Scottsdale") in connection with the above-referenced matter. On behalf of Scottsdale, this letter sets forth Scottsdale's supplemental coverage analysis under the above-referenced Policy for the August 22, 2019 Final Award rendered against David M. Fineman in the JAMS Arbitration (the "Award").[1] Based on the Policy provisions, findings and conclusions in the Award, and law discussed in this letter, no coverage appears to be available under the Policy for the Award.

**A.   Policy Provisions**

Section C.1.f. of the Policy's D&O Coverage Section, as amended by Endorsement No. 2, precludes coverage for any Claim alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving, among other things, any dishonest act of an insured (the "Conduct Exclusion"). The Conduct Exclusion is triggered when a final judgment is rendered against an Insured as to such conduct.

The Policy only affords coverage for Loss, which is defined in Section B.7. of the Policy's D&O Coverage Section. Section B.7(g) provides that Loss does not include "any amounts owed or paid to one or more securities holders of the Company under any written or express contract or agreement."

---

[1] This letter supplements Scottsdale's prior coverage letters, which are incorporated herein by reference.

Bailey Cavalieri LLC  •  10 West Broad Street  •  Suite 2100  •  Columbus, Ohio 43215-3422
P 614.221.3155   F 614.221.0479   W baileycav.com
ATTORNEYS AT LAW

Randy M. Hess
October 9, 2019
Page 2

### B. Findings and Conclusions in the Award

According to the Arbitrator, Claimants Daniel Haffner and Patrick Haffner (the "Haffners") "contend that Fineman made false representations to induce them to invest, without disclosing the true nature of KineMed's financial health." (Award, p. 14.) The Haffners further contended that Fineman "failed to make complete and honest disclosures." (Award, p. 23) The Haffners asserted a variety of claims against Fineman based on the misrepresentations that induced them to invest, including breach of fiduciary duty and negligent misrepresentation. (*Id.*)

The misrepresentations that the Arbitrator concluded were actionable occurred in August 2015 when Fineman sent the Haffners "a written report about the company's claims to success, including plans to start clinical trials of Noscapine in 2016 and KineMed's growth and liquidity prospects," which plans "KineMed did not have the funds needed to carry out." (*Id.*, p. 12.) In addition, Fineman did not tell the Haffners of other adverse developments, including that "Loar, the CFO, had long lost confidence in the company, MidCap required weekly reporting calls, Fineman had retained bankruptcy counsel, and layoffs had occurred." (*Id.*)

The Arbitrator described Fineman's fiduciary duty as a duty "to make a full disclosure of all materials facts relating to the transaction in question" and stated a fiduciary's "failure to make a full and complete disclosure or any concealment of a materials facts amounts to and is equivalent of an affirmative misrepresentation or fraud." (*Id.*, p. 18.) The Arbitrator concluded that Fineman had breached such fiduciary duty because in August 2015 he made representations to the Haffners, knowing that KineMed did not have the funds needed to carry out its plans and "by this time, Loar had expressed his concerns to the Board about KineMed's viability, . . . MidCap required weekly reporting calls to ensure payment, and Fineman had retained bankruptcy counsel." (*Id.*, p. 22.) In addition, in August 2015 Fineman "failed to disclose material information about KineMed's precarious financial position and mounting concerns regarding the company's ability to survive." (*Id.*) In sum, the Arbitrator's conclusion that Fineman had breach his fiduciary duty was based on misrepresentations and concealments he made to the Haffners in August 2015. Those same misrepresentations and concealments formed the basis for the Arbitrator's conclusion that Fineman was liable for negligent misrepresentation. (*Id.*, p. 25.)

The Arbitrator awarded the Haffners damages resulting from the breach of fiduciary duty and negligent misrepresentation and attorney fees. The attorney fee award was based on the Haffners right to attorney fees under their Subscription Purchase Agreements. (*Id.*, p. 40.)

### C. Law

As noted above, the Conduct Exclusion precludes coverage for any Claim arising out of a "dishonest" act. Dishonest means deception, betrayal, faithlessness, an absence of integrity, and a disposition to deceive. *See Guillen v. City of Riverside*, 2014 Cal. App. Unpub. LEXIS 9223, *13 (Cal. App. Dec. 26, 2014); Merriam-Webster Dictionary (dishonesty means lack of honesty



or integrity); *Westport Ins. Corp. v. Hanft & Knight, P.C.*, 523 F. Supp. 2d 444, 458 (M.D. Pa. 2007) (referring to dictionary definitions of the undefined term "dishonest" as used in a dishonesty exclusion and noting that such definitions are "characterized by the lack of truth, honesty, or trustworthiness").

Breach of fiduciary duty is a "dishonest" act. *See FSLIC v. Mmahat*, 97 B.R. 293, 298 (E.D. La. 1988) (holding coverage for breach of fiduciary duty was barred by a dishonesty exclusion and stating a breach of fiduciary duty "is a dishonest act within the meaning of the policy in question").

Negligent misrepresentation is also a dishonest act. In this regard, under California law, a claim for negligent misrepresentation is viewed as a "species of fraud or deceit." *See Conroy v. Regents of University of Cal.*, 45 Cal. 4th 1244, 1255 (Cal. 2009); *Loken v. Century 21 – Award Properties*, 36 Cal. App. 263, 271 (Cal. App. 1995). A negligent misrepresentation claim is separate and distinct from a negligence claim and is "a form of deceit." *See Billy v. Arthur Young & Co.*, 3 Cal. 4th 370, 407 (Cal. 1992). Dishonesty includes deceit. *See Guillen*, 2014 Cal. App. Unpub. LEXIS 9223 at *13.

Here, the Arbitrator's findings and conclusion establish that Fineman engaged in dishonest acts by misrepresenting and failing to disclose to the Haffners KineMed's true financial condition in order to induce them to invest in the Company. Those dishonest acts formed the basis for the claims for breach of fiduciary duty and negligent misrepresentation for which Fineman was found liable. Consequently, Scottsdale believes that coverage for the Award is precluded by the Conduct Exclusion.

Scottsdale further believes that, even if the Conduct Exclusion did not preclude coverage for the Award, no coverage exists for the attorney fees that were awarded to the Haffners. As noted above, covered Loss under the Policy does not include any amounts paid to a security holder under any contract. The Haffners sought and were awarded attorney fees pursuant to the attorney fee provision in their Subscription Purchase Agreements. Consequently, the attorney fees awarded to the Haffners do not constitute covered Loss.

### D. <u>Reservation of Rights</u>

Scottsdale continues to expressly reserve all of its rights and defenses under the Policy and available at law with respect to this matter, including, without limitation, the rights and defenses set forth in Scottsdale's prior coverage letters and the right to raise additional Policy terms, conditions, and defenses that Scottsdale now has or hereafter may have under the Policy or at law. Scottsdale recognizes that the Insureds are similarly reserving their rights.

\* \* \*

Randy M. Hess
October 9, 2019
Page 4

As set forth above, Scottsdale does not believe that any coverage is available for the Award under the Policy. Scottsdale welcomes you or the Insureds to contact us to discuss any questions that may exist with respect to coverage for the Award.

Please feel free to contact us should you have any questions regarding this supplemental coverage analysis. While we encourage you to first contact us with any questions or concerns you may have with regard to the positions expressed in this letter, you may be entitled to have this matter reviewed by the California Department of Insurance to the extent you disagree with any or all of the positions we have expressed herein. Your inquiry should be directed as follows:

> State of California Department of Insurance
> Claims Services Bureau
> 300 South Spring Street, 11th Floor
> South Tower
> Los Angeles, CA 90013
> 1-800-927-4357 (calling from within CA)
> 213-897-8921 (calling from outside CA)

Sincerely,

BAILEY CAVALIERI LLC

Keith A. Little

cc: Emil Soskin (emil.soskin@nationwide.com)

#1733192
12180.17611

**BAILEY | CAVALIERI**